**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **RONITA McKINLEY and**<br>**GARY McKINLEY, h/w**<br>2508 N. Crown Circle<br>Carlsbad, NM 88220 | |
| and | **Case No.** |
| **SHAYNE COLLINS**<br>2515 N. Crown Circle<br>Carlsbad, NM 88220 | **JURY TRIAL DEMANDED** |
| and | |
| **TIFFANY COLLINS**<br>2515 N. Crown Circle<br>Carlsbad, NM 88220 | |
| and | |
| **TIFFANY COLLINS, individually and**<br>**as parent and natural guardian of**<br>**T.K, a minor**<br>2515 N. Crown Circle<br>Carlsbad, NM 88220 | |
| and | |
| **TALYSSA MANN**<br>4424 E. Baseline Road<br>Phoenix, AZ 85042 | |
| and | |
| **TOMLYN McDONALD and**<br>**DUSTIN McDONALD, h/w**<br>3600 Boyd Avenue<br>Midland, TX 79707 | |
| and | |

**TOMLYN McDONALD and
DUSTIN McDONALD, individually and
as parents and natural guardians of
Ca.M., a minor**
3600 Boyd Avenue
Midland, TX 79707

and

**TOMLYN McDONALD and
DUSTIN McDONALD, individually and
as parents and natural guardians of
Ch.M., a minor**
3600 Boyd Avenue
Midland, TX 79707

*Plaintiffs*

**vs.**

**RIPLEY ENTERTAINMENT, INC.,
d/b/a RIDE THE DUCKS**
7576 Kingspointe PKWY – Suite 188
Orlando, FL 32819

and

**BRANSON DUCK VEHICLES, LLC
d/b/a RIDE THE DUCKS**
2320 W. Highway 76
Branson, MO 65616

and

**RIDE THE DUCKS INTERNATIONAL LLC,
d/b/a RIDE THE DUCKS**
222 E. Dunklin Street, Suite 102
Jefferson City, MO 65101

and

**RIDE THE DUCKS OF BRANSON, LLC,
d/b/a RIDE THE DUCKS**
2320 W. Highway 76
Branson, MO 65616

2

and

**HERSCHEND FAMILY ENTERTAINMENT
CORPORATION, d/b/a RIDE THE DUCKS**
2800 W. 76 Country Boulevard
Branson, MO 65616

and

**AMPHIBIOUS VEHICLE
MANUFACTURING, LLC**
2320 W. Highway 76
Branson, MO 65616

*Defendants*

# COMPLAINT

**COME NOW** the Plaintiffs, above-named, by and through their attorneys, Aleshire Robb, P.C., and allege as follows:

## I.     INTRODUCTION

1.     On July 19, 2018, seventeen people had their lives tragically and horrifically taken from them when the Ride the Ducks *Stretch Duck 07* Duck Boat sank to the bottom of Table Rock Lake in Branson, Missouri.

2.     As *Stretch Duck 07* sank, the canopy of the Duck Boat entrapped passengers and dragged them to the bottom of the lake with the Duck Boat.

3.     On that day, Defendants, Ripley Entertainment, Inc. and/or Branson Duck Vehicles, LLC (hereinafter "Ripley"), owned and operated *Stretch Duck 07* and recklessly risked the lives of its passengers for purely financial reasons.

4.     Despite being aware of impending severe weather conditions, Ripley intentionally decided to take the Duck Boat out onto Table Rock Lake instead of cancelling the tour and refunding the patrons' money.

3

5.     *Stretch Duck 07* was designed and manufactured by Defendants, Ride the Ducks, International, LLC, Ride the Ducks of Branson, LLC, Herschend Family Entertainment Corporation and/or Amphibious Vehicle Manufacturing, LLC. These Defendants will be collectively referred to as "RTDI", unless otherwise indicated.

6.     This tragedy was the predictable and predicted result of decades of unacceptable, greed-driven, and willful ignorance of safety by the Duck Boat industry in the face of specific and repeated warnings that their Duck Boats are death traps for passengers and pose grave danger to the public on water and on land.

7.     Prior to this catastrophe, the Duck Boat industry knew that their Duck Boats were entirely unfit to be used for any purpose and had previously been responsible for dozens of deaths.

8.     Prior to killing seventeen people in Branson, injuring fourteen others, and ruining the lives of countless more, Defendants had been told that design flaws in the Duck Boats made them more susceptible to sinking.

9.     On numerous occasions before July 19, 2018, Defendants were warned that the canopies used on their Duck Boats were dangerous and created death traps for passengers in the event of emergency.

10.     For two decades, Defendants had been repeatedly told to change the design of their Duck Boats to make them safer, but they entirely ignored these warnings.

11.     As recently as August 2017, Defendants were again warned that the dangerous design of their Duck Boats put their vessels at risk of sinking.

12.     Upon information and belief, in August 2017, prior to purchasing the Branson operations of RTDI, Ripley hired an inspector, Steven Paul, to inspect the Branson Duck Boats.

4

13. Defendants were told by Steven Paul that their Duck Boats' engines and the bilge pumps that remove water from their hulls might fail in bad conditions due to the improper placement of the boats' exhaust system.

14. Defendants did nothing in response to these warnings.

15. Despite the fact that Defendants knew their Duck Boats were unfit to be used even in ideal conditions, on the date of this catastrophe, Defendants' greed caused them to ignore severe weather conditions that demanded they cancel all trips scheduled for their Duck Boats.

16. Despite countless explicit warnings, Defendants repeatedly chose to value profits over the safety of their passengers, and sent *Stretch Duck 07* and thirty-one people out on Table Rock Lake on July 19, 2018, where the vessel took on water and sank to the bottom of the lake, dragging seventeen innocent victims to their avoidable deaths and causing life-altering injuries to the fourteen people who survived.

17. Plaintiffs bring this lawsuit demanding monetary damages, as required by law, but also demanding that Defendants immediately cease manufacturing and operating all Duck Boats in the United States and abroad, and demanding that Defendants support the efforts to ensure that all others in the Duck Boat industry cease operations until Duck Boats are made unsinkable and their canopies are removed.

## II.    PARTIES

18. Plaintiffs, Ronita McKinley and Gary McKinley, husband and wife, are adult citizens of New Mexico, residing at 2508 N. Crown Circle, Carlsbad, NM 88220.

19. Plaintiff, Shayne Collins, is an adult citizen of New Mexico, residing at 2515 N. Crown Circle, Carlsbad, NM 88220.

5

20. Plaintiff, Tiffany Collins, is an adult citizen of New Mexico, residing at 2515 N. Crown Circle, Carlsbad, NM 88220.

21. Plaintiff, Tiffany Collins, is the parent and natural guardian of T.K., a minor, who has resided with Plaintiff, Tiffany Collins at 2515 N. Crown Circle, Carlsbad, NM 88220, at all times relevant hereto.

22. Plaintiff, Talyssa Mann, is an adult citizen of New Mexico, residing at 4424 E. Baseline Road, Phoenix, AZ 85042.

23. Plaintiffs, Tomlyn McDonald and Dustin McDonald, husband and wife, are adult citizens of Texas, residing at 3600 Boyd Avenue, Midland, TX 79705.

24. Plaintiffs, Tomlyn McDonald and Dustin McDonald, are the parents and natural guardians of Ca.M., a minor, who has resided with Plaintiffs, Tomlyn McDonald and Dustin McDonald, at 3600 Boyd Avenue, Midland, TX 79705, at all times relevant hereto.

25. Plaintiffs, Tomlyn McDonald and Dustin McDonald, are the parents and natural guardians of Ch.M., a minor, who has resided with Plaintiffs, Tomlyn McDonald and Dustin McDonald, at 3600 Boyd Avenue, Midland, TX 79705, at all times relevant hereto.

26. Defendant, Ripley Entertainment, Inc., d/b/a Ride the Ducks, is a corporation organized and existing under the laws of the State of Florida with a registered corporate Headquarters at 7576 Kingspointe Pkwy – Suite 188 in Orlando, FL, 32819 which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the State of Missouri.

27. At all relevant times herein, Defendant, Ripley Entertainment, Inc., d/b/a Ride the Ducks, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

6

28.     Defendant, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, is a corporation organized and existing under the laws of the State of Missouri with its principal place of business located at 2320 W. Highway 76, Branson, MO 65616, which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the State of Missouri.

29.     At all relevant times herein, Defendant, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

30.     Defendant, Ride the Ducks International LLC, d/b/a Ride the Ducks, is a corporation organized and existing under the laws of the State of Missouri with a registered agent for service of process at Capitol Corporate Services, Inc., 222 E. Dunklin Street, Suite 102, Jefferson City, MO 65101, which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the State of Missouri.

31.     At all relevant times herein, Defendant, Ride the Ducks International LLC, d/b/a Ride the Ducks, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

32.     Defendant, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, is a corporation organized and existing under the laws of the State of Missouri with a registered agent for service of process at 2320 W. Highway 76, Branson, MO 65616, which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the State of Missouri.

33.     At all relevant times herein, Defendant, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

7

34. Defendant, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, is a corporation organized and existing under the laws of the State of Missouri with its principal place of business located at 2800 W. 76 Country Boulevard, Branson, MO 65616, which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the State of Missouri.

35. At all relevant times herein, Defendant, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, was acting by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

36. Defendant, Amphibious Vehicle Manufacturing, LLC, is a corporation organized and existing under the laws of the State of Missouri with a registered agent for service of process at 2320 W. Highway 76, Branson, MO 65616, which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the State of Missouri.

37. At all relevant times herein, Defendant, Amphibious Vehicle Manufacturing, LLC, was acting by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

38. On December 18, 1996, Ride the Ducks of Branson, Inc. was created by way of the filing of Articles of Incorporation.

39. In 2001, the RTDI Defendants partnered with Herschend Family Entertainment Corporation in pursuit of national and international expansion.

40. On November 15, 2001, Ride the Ducks International, LLC was created by way of filing Articles of Organization.

41. On November 16, 2001, an Amendment of Articles of Incorporation of Ride the Ducks of Branson, Inc., was filed, changing the corporation's name to RFMC Investments, Inc.

42.     On November 19, 2001, Ride the Ducks of Branson, LLC was created by way of filing Articles of Organization.

43.     On November 19, 2001, Amphibious Vehicle Manufacturing, LLC was created by way of filing Articles of Organization.

44.     In 2004, Defendant, Herschend Family Entertainment Corporation, became the sole owner of Ride the Ducks.

45.     On October 27, 2005, Ride the Ducks of Branson, LLC filed Notices and Articles of Merger of Limited Liability Companies, merging with Ride the Ducks of Memphis, LLC, Ride the Ducks of San Diego, LLC, Ride the Ducks of Baltimore, LLC, Ride the Ducks of Philadelphia, LLC, Ozarks Scenic Tours, LLC, Amphibious Vehicle Manufacturing, LLC, Duck Development, LLC, and Ride the Ducks International, LLC.

46.     Given the interrelated nature of the RTDI Defendants in this litigation, they are referred to collectively unless otherwise indicated.

47.     On November 29, 2017, Branson Duck Vehicles, LLC was created by way of filing Articles of Organization.

48.     In December 2017, Defendant, Ripley Entertainment, Inc., acquired the Branson operations of the RTDI Defendants, as well as its vehicles, which were designed and manufactured by the RTDI Defendants.

49.     RTDI continues to operate as the nation's largest amphibious tour operator with a fleet of nearly 100 vessels which carry over 1 million guests annually.

50.     RTDI's continued existence poses a threat to the lives of its guests and the public through its operation of these dangerous Duck Boats.

9

## III. JURISDICTION AND VENUE

51. The Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds the jurisdictional threshold, exclusive of costs, it is between citizens of different states, and because the defendants each have certain minimum contacts with the State of Missouri such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

52. Venue in the United States District Court for the Western District of Missouri is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims and causes of action occurred in this judicial district, and because Defendants were subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## IV. FACTS

**The Deadly History of Duck Boats**

53. Prior to the tragic events of July 19, 2018, Defendants knew that their Duck Boats were inherently unsafe given that from 1999 to 2016, Duck Boats were directly responsible for the deaths of dozens of innocent people.

10



54. On May 1, 1999, the ***Miss Majestic* Duck Boat sank on Lake Hamilton, Arkansas**, drowning 13 Duck Boat passengers.

55. In December 1999, the National Transportation Safety Board ("NTSB") held a public forum on amphibious passenger vehicle safety, which was attended by members of the amphibious passenger vehicle industry and technical experts, including members of RTDI such as Robert F. McDowell, then president of Ride the Ducks Branson.

56. Prior to July 19, 2018, Defendants were well aware of the *Miss Majestic* tragedy, which was a topic of frequent discussion in the industry.

57. On February 18, 2000, based on its investigation of the *Miss Majestic* accident and the information presented at the forum about the vulnerability of amphibious passenger vehicles to flooding and sinking, the NTSB Safety Board issued the following safety recommendation to 30 operators and re-furbishers of amphibious passenger vehicles in the United States:

Case 6:18-cv-03288-MDH   Document 1   Filed 09/06/18   Page 11 of 58

*M-00-5*

*Without delay, alter your amphibious vessels to provide reserve buoyancy through passive means, such as watertight compartmentalization, built-in flotation, or equivalent measures, so that they will remain afloat and upright in the event of flooding, even when carrying a full complement of passenger and crew.*

58.     Defendants received this recommendation and read it before July 19, 2018.

59.     RTDI specifically responded to the NTSB's recommendation, writing a letter to Jim Hall, Chairman of the NTSB on June 26, 2000, in an attempt to refute the NTSB's M-00-5 Safety Recommendation.

60.     In this letter, Robert McDowell admitted that the significant costs associated with making their Duck Boats safer posed a roadblock to adopting the NTSB's recommendations:



June 26, 2000

Jim Hall, Chairman
National Transportation Safety Board
490 L'Enfant Plaza, S.W.
Washington, D.C. 20594

Re:  Response to M-00-5

. . . .

extension, will also need to be considered. We have a potential solution that we are pursuing at this time. It will require considerable feasibility evaluation, and thus expense. We hope to make a determination regarding this concept by the year-end.

. . . .

12

Once again, thank you for the opportunity to provide input regarding the Safety Recommendation M-00-05.

Sincerely,

*Robert F. McDowell*

Robert F. McDowell
President

61.     Robert McDowell's challenge of the NTSB chairman and the NTSB safety recommendation was driven solely by an attempt to value profits over the safety of Defendants' passengers as Mr. McDowell had no training or formal academic background in engineering.

62.     Robert McDowell designed and developed "stretch duck" boats, including *Stretch Duck 07*.

63.     Upon information and belief, Robert McDowell completed just two years of college and had no background, training or certification in mechanics to support his claims regarding alternative designs.

64.     Upon information and belief, Robert McDowell's design was based entirely upon conversations with a high school football coach who previously co-owned the Ride the Ducks business.

65.     Upon information and belief, Robert McDowell "self-educated by going to auto parts stores and talking to different people" and did not consult with any engineers when designing the stretch Duck Boats.

66.     On August 16, 2000, Jim Hall, chairman of the NTSB, responded ***directly*** to Robert McDowell's attempt to rebuff the NTSB recommendations, emphasizing that the recommendations were made "because the Board believed that ***immediate* action was necessary to avoid additional loss of life**":

13

Mr. Robert F. McDowell
President
Ride the Ducks
Land & Lake Tour
Post Office Box 1837
Branson, Missouri 65615

Dear Mr. McDowell:

. . . .

    The Board agrees that proper maintenance and operator training are also important to DUKW safety. These issues will be addressed in the Safety Board's final report, which will also address the probable cause of the Arkansas accident. The reserve buoyancy recommendation was issued in advance of the final accident report of the *Miss Majestic* accident because the Board believed that immediate action was necessary to avoid additional loss of life.

. . . .

Thank you for your interest in transportation safety.

Sincerely,

ORIGINAL SIGNED BY
JIM HALL

Jim Hall
Chairman

    67.    Despite the NTSB chairman's warning directed to Robert McDowell and to Defendants that immediate action was necessary to avoid additional loss of life, Defendants ignored this warning.

    68.    On April 2, 2002, the NTSB adopted and published a report entitled "Marine Accident Report Sinking of the Amphibious Passenger Vehicle *Miss Majestic*, Lake Hamilton, Near Hot Springs, Arkansas, May 1, 1999."

    69.    According to the NTSB's *Miss Majestic* report, "[o]ne major outcome of the forum was the realization by participants that amphibious vehicles pose unique and unresolved safety risks to the public, but that the vehicles could be made safe by installing safety features that would prevent them from sinking when flooded."

14

70.     Despite this realization, the NTSB report noted that there was a "negative response from amphibious passenger vehicle owners concerning the practicality of providing reserve buoyancy to DUKW boats", leading to the unacceptable conclusion that "voluntary action will not be taken by the rest of the industry to address the need for adequate reserve buoyancy on amphibious passenger vehicles".

71.     As a result, the NTSB report maligned that "an unacceptable level of risk to passenger safety continues to exist in these vehicles".

72.     The NTSB noted that the need for additional passenger safety features was heightened considering the fact that "[t]his unique vehicle is often promoted to and used by school groups".

73.     Specifically, the Safety Board was "particularly concerned that both adults and children wearing lifejackets are at risk of being drowned if entrapped by the overhead canopy".

74.     The NTSB's *Miss Majestic* report found that the canopy over passengers' heads "essentially caged them, making escape in limited time available extremely difficult".

75.     The report also noted that "the natural buoyancy of the passengers' bodies forced them into the overhead canopy, which acted like a net to entrap them and to prevent their vertical escape."

76.     The Safety Board specifically warned that "on amphibious passenger vehicles that cannot remain afloat when flooded, canopies can represent an unacceptable risk to passenger safety", determining that "a more realistic approach to ensure passenger safety would be to afford passengers a reasonable opportunity to escape by removing the canopy".

15

77.     If the caging canopies were removed, the Safety Board noted that "wearing lifejackets before the vehicle enters the water would enhance the safety of passengers on board DUKWs without adequate reserve buoyancy where canopies have been removed".

78.     Ultimately, the NTSB issued the following "Conclusions":

3.      The canopy on the *Miss Majestic* was a major impediment to the survival of the passengers.

9.      On amphibious passenger vehicles that cannot remain afloat when flooded, canopies can represent an unacceptable risk to passenger safety.

10.     Wearing lifejackets before the vehicle enters the water would enhance the safety of passengers on board DUKWs without adequate reserve buoyancy where canopies have been removed.

79.     The NTSB report concluded by stating that contributing to the sinking "was a flaw in the design of DUKWs as converted for passenger service, that is, the lack of adequate reserve buoyancy that would have allowed the vehicle to remain afloat in a flooded condition", and contributing to the high loss of life "was a continuous canopy roof that entrapped passengers within the sinking vehicle".

80.     The conclusions of the NTSB report were ignored and disregarded by Defendants.

81.     On June 23, 2002, just two months after the NTSB's report, the ***Lady Duck* sank in the Ottawa River**.

82.     Four passengers, including a mother and her two young children, were trapped under the sinking boat's canopy and ultimately drowned.  Even more tragically, these victims were able to put on life jackets but were caged in the canopy and dragged down with the boat.

83.     Subsequent investigation revealed that, in addition to the canopy's failures, a failure of the *Lady Duck's* bilge pump contributed to this tragedy.

16

84.     The dangers and unacceptable risks of Duck Boats were further highlighted by the July 7, 2010 tragedy where ***DUKW 34* sank in Philadelphia** and resulted in the deaths of two Hungarian tourists, Dora Schwendtner and Szabolcs Prem.

85.     A collision between *DUKW 34* and a barge caused the Duck Boat to sink.

86.     Due to the defective canopy design on the Duck Boat, Dora and Szabolcs were caged in the canopy and dragged down with the vessel, causing their horrific and excruciating deaths by drowning.

87.     Representatives from RTDI were repeatedly told during the litigation that ensued of the dangers of their canopy design and the fact that engineering analysis established that the Duck Boat was defective and should not be in use.

88.     In addition to being dangerous on water, Duck Boats are deadly on land.

89.     On May 8, 2015, Elizabeth Karnicki was run over and killed by a Duck Boat owned and operated by RTDI in Philadelphia, PA while her husband was forced to watch.

90.     The operator of *DUKW 46* failed to observe Elizabeth Karnicki lawfully crossing in front of his vehicle due to his lack of situational awareness and the massive blind spots on the Duck Boat caused by the bow in front of the operator which blocked him from being able to see the pedestrian in front of him.

91.     Four months later, on September 24, 2015, the front axle of a Duck Boat broke in Seattle, causing a horrific accident with a bus which left five dead and injured sixty-nine.

92.     Prior to the Seattle tragedy, RTDI was aware of a front axle defect in its Duck Boats but failed to issue the appropriate recall, a flagrant violation of applicable law, which would have prevented this horrible accident.

17

93.     On April 30, 2016, a Duck Boat caused tragedy again when a Boston woman was run over while riding her scooter.

94.     Twenty-eight-year-old Allison Warmuth tragically died as the result of an inattentive Duck Boat driver, who was seen on video, turned in his seat and pointing out landmarks when he ran over Ms. Warmuth with the 2.5 ton vessel.

**The Branson Operation was Warned About its Defective Duck Boats Last Year**

95.     Upon information and belief, in August 2017, prior to purchasing the Branson operations of RTDI, Ripley hired inspector Steven Paul to inspect the Duck Boats used by the Branson operation, including *Stretch Duck 07*.

96.     According to Mr. Paul, his inspection was conducted "so [Ripley] had the opportunity to know what they were buying before the sale was final".

97.     Upon information and belief, Steven Paul warned Defendants that the design of their Duck Boats put their vessels at risk of sinking.

98.     Upon information and belief, the chassis for *Stretch Duck 07* was originally built in 1944 and used a four-ton-truck-chassis.

99.     Defendants' decision to use the chassis from the 1940s was for the purpose of avoiding modern safety and emissions standards.

100.    Upon information and belief, Defendants were specifically told in August 2017 that the dangerous design of the Duck Boats rendered them susceptible to sinking in the event of rough conditions on the water due to the improper placement of the motor's exhaust in front of the boat and below the water line.

101.    According to reports, Mr. Paul told Defendants that "in rough conditions, water could get into the exhaust system, and then into the motor, cutting it off".

18

102. Upon information and belief, this warning was ignored and nothing was done.

103. The rough conditions warned of by Mr. Paul were the exact conditions faced by *Stretch Duck 07* on Table Rock Lake on July 19, 2018.

**The Tragic Events of July 19, 2018**

104. Defendants' *Stretch Duck 07* should have never been on the water on the date of this tragedy.

105. Jim Pattison, Jr., Ripley's president, admitted as much when asked in an interview if the boat should have been on the water, replying **"no, it shouldn't have been in the water"**.

106. At 11:24 a.m. on the morning of July 19, 2018, the National Weather Service issued a severe thunderstorm watch for much of southwest Missouri, including Table Rock Lake.



107.    The severe thunderstorm watch was in effect from 11:20 a.m. until 9:00 p.m. on July 19, 2018, and cautioned "widespread damaging winds likely with isolated **significant gusts to 75 mph possible**".

108.    The risk of severe storms on July 19, 2018 was highlighted by the National Weather Service as early as the day before this tragedy, with the July 18, 2018 outlook issued by its Storm Prediction Center cautioning of the possibility of "damaging wind risk" the next day.

109.    Despite the prior day's warnings and that morning's severe thunderstorm watch, Ripley prioritized profits over safety and continued normal business operations on July 19, 2018.

110.    At 6:32 p.m., the warning was upgraded to a severe thunderstorm warning, specifically for Taney, Stone, and Barry counties, including Table Rock Lake, specifically warning that the area was to experience winds of up to 60 miles per hour.



111.    In the face of this second, heightened warning, Ripley continued to prioritize profits over safety and carried on with normal business operations, sending Ride the Ducks *Stretch Duck 07* out on Table Rock Lake with thirty-one people on board, including Ronita McKinley, Shayne Collins, Tiffany Collins, T.K., a minor, Talyssa Mann, Tomlyn McDonald, Ca.M., a minor, and Ch.M., a minor.

112.    Previously, Ripley had marketed and sold tickets to these passengers for a tourist trip on the amphibious vehicle which was to first include a tour through the streets of Branson, followed by a cruise on Table Rock Lake.

113.    The subject tour was scheduled to begin at 6:30 p.m.

114.    Upon information and belief, at 6:28 p.m., the Captain and Driver of *Stretch Duck 07* were told to modify the tour schedule and take the water portion before the land portion in an effort to beat the storm.

115.    As passengers began to board the vessel, the Captain acknowledged that he had monitored the weather radar before the trip.

116.    At approximately 6:50 p.m., the Captain began a safety briefing before the boat entered the water.

117.    During this briefing, passengers were told they would not need their life jackets.

118.    This Captain was specifically trained, consistent with RTDI policy, that he was to forego water entry if severe weather was approaching the area, if there was a risk of winds exceeding 35 miles per hour, or if waves might be higher than 2.5 feet.

119.    Thus, by entering the water when severe weather was approaching, Ripley violated its own policies and the policies that previously existed under RTDI.

120.     In addition to the violations of Ripley and RTDI policies, entering the water when severe weather was approaching was an explicit violation of Coast Guard policies.

121.     According to the Coast Guard's conditions of operation imposed following its January 2017 inspection of *Stretch Duck 07*, the vessel was prohibited from waterborne operations "when winds exceed thirty-five (35) miles per hour, and/or the wave height exceeds two (2) feet".



. . . .



122.     Weather reports called for winds up to sixty miles per hour, nearly double the maximum allowed by the Coast Guard for waterborne operations.

123.     After *Stretch Duck 07* entered the water, the well-predicted storm arrived and the Duck Boat encountered waves as high as four feet on Table Rock Lake.



124.    At this point, company policy and Coast Guard regulations mandated that the Captain instruct passengers to put on their life jackets.

125.    Again the Captain violated protocol and never gave this instruction.

126.    Instead, the Captain lowered the plastic side curtains, thus further caging passengers in the soon-to-sink vessel.

127.    Due to the defective design of the Duck Boat, *Stretch Duck 07* struggled to fight through these waves, with its bow going under the surface of Table Rock Lake.





128.    Due to the defective design of the Duck Boat, *Stretch Duck 07* was unable to stay above the surface of Table Rock Lake, taking on water and slowly sinking lower in the lake with each additional gallon of water that poured in.



129.    Due to the dangerous and defective canopy of *Stretch Duck 07*, its passengers were caged inside the Duck Boat as it sank below the surface of Table Rock Lake.

130.    As a direct and proximate result of Defendants' carelessness, negligence, gross negligence, recklessness, outrageous conduct, and complete disregard for the welfare of their passengers, seventeen people were dragged to their horrific deaths when *Stretch Duck 07* sank to the bottom of Table Rock Lake, with the fourteen survivors suffering life-altering injuries.

131.    As the Duck Boat sank to the bottom of Table Rock Lake, the canopy caged passengers in and dragged them down with the Duck Boat.

132.    In addition to the excruciating deaths suffered by the Duck Boats victims, other passengers on *Stretch Duck 07*, including Plaintiffs, Ronita McKinley. Shayne Collins, Tiffany Collins, T.K., a minor, Talyssa Mann, Tomlyn McDonald, Ca.M., a minor, and Ch.M., a minor, sustained serious and life-altering physical, mental, and emotional injuries.

133.    Plaintiff, Ronita McKinley, suffered physical, mental, and emotional injuries including, but not limited to, severe water inhalation injuries, pneumonia, flooding of internal organs, fractured ribs, decrease of heart function, severe chest pain, lung injuries, shortness of breath, difficulty breathing, vomiting, exacerbation of previous conditions, and other injuries, all of which have required and may in the future require hospital treatment, psychiatric treatment,

24

neurological treatment, and other rehabilitative and medical procedures. She has sustained and may in the future continue to sustain lost wages and a loss of earning capacity. She has incurred and may in the future continue to incur out-of-pocket medical expenses.

134. Plaintiff, Shayne Collins, suffered physical, mental, and emotional injuries including, but not limited to, water inhalation injuries, severe chest pain, shortness of breath, difficulty breathing, vomiting, exacerbation of previous conditions, and other injuries, all of which have required and may in the future require hospital treatment, psychiatric treatment, neurological treatment, and other rehabilitative and medical procedures. He has sustained and may in the future continue to sustain lost wages and a loss of earning capacity. He has incurred and may in the future continue to incur out-of-pocket medical expenses.

135. Plaintiff, Tiffany Collins, suffered physical, mental, and emotional injuries including, but not limited to, severe water inhalation injuries, severe chest pain, shortness of breath, difficulty breathing, vomiting, exacerbation of previous conditions, and other injuries, all of which have required and may in the future require hospital treatment, psychiatric treatment, neurological treatment, and other rehabilitative and medical procedures. She has sustained and may in the future continue to sustain lost wages and a loss of earning capacity. She has incurred and may in the future continue to incur out-of-pocket medical expenses.

136. Plaintiff, T.K., a minor, suffered physical, mental, and emotional injuries including, but not limited to, water inhalation injuries, severe chest pain, shortness of breath, difficulty breathing, vomiting, exacerbation of previous conditions, and other injuries, all of which have required and may in the future require hospital treatment, psychiatric treatment, neurological treatment, and other rehabilitative and medical procedures. He may in the future

sustain lost wages and a loss of earning capacity. He has incurred and may in the future continue to incur out-of-pocket medical expenses.

137. Plaintiff, Talyssa Mann, suffered physical, mental, and emotional injuries including, but not limited to, severe water inhalation injuries, severe chest pain, shortness of breath, difficulty breathing, vomiting, exacerbation of previous conditions, and other injuries, all of which have required and may in the future require hospital treatment, psychiatric treatment, neurological treatment, and other rehabilitative and medical procedures. She has sustained and may in the future continue to sustain lost wages and a loss of earning capacity. She has incurred and may in the future continue to incur out-of-pocket medical expenses.

138. Plaintiff, Tomlyn McDonald, suffered physical, mental, and emotional injuries including, but not limited to, severe water inhalation injuries, severe chest pain, shortness of breath, difficulty breathing, vomiting, exacerbation of previous conditions, and other injuries, all of which have required and may in the future require hospital treatment, psychiatric treatment, neurological treatment, and other rehabilitative and medical procedures. She has sustained and may in the future continue to sustain lost wages and a loss of earning capacity. She has incurred and may in the future continue to incur out-of-pocket medical expenses.

139. Plaintiff, Ca.M., a minor, suffered physical, mental, and emotional injuries including, but not limited to, water inhalation injuries, severe chest pain, shortness of breath, difficulty breathing, vomiting, exacerbation of previous conditions, and other injuries, all of which have required and may in the future require hospital treatment, psychiatric treatment, neurological treatment, and other rehabilitative and medical procedures. He may in the future sustain lost wages and a loss of earning capacity. He has incurred and may in the future continue to incur out-of-pocket medical expenses.

26

140. Plaintiff, Ch.M., a minor, suffered physical, mental, and emotional injuries including, but not limited to, water inhalation injuries, severe chest pain, shortness of breath, difficulty breathing, vomiting, exacerbation of previous conditions, and other injuries, all of which have required and may in the future require hospital treatment, psychiatric treatment, neurological treatment, and other rehabilitative and medical procedures. She may in the future sustain lost wages and a loss of earning capacity. She has incurred and may in the future continue to incur out-of-pocket medical expenses.

141. Prior to July 19, 2018, Defendants knew that Duck Boats are deadly on the land and on the water.

142. Prior to July 19, 2018, Defendants knew that their Duck Boats' minimal usefulness as a product is outweighed by the grave danger they pose to the community.

143. Despite Defendants' knowledge, they chose to value profits over the safety of their passengers and sent thirty-one people in *Stretch Duck 07* out on Table Rock Lake on July 19, 2018, willfully and intentionally placing them directly in harm's way.

144. The injuries and death sustained as a result of this tragedy were caused as a direct and proximate result of the negligence, gross negligence, carelessness, recklessness and/or other liability-producing conduct of Defendants.

145. As a result, Plaintiffs claim damages for all general, special, incidental and consequential damages incurred, or to be incurred, by Plaintiffs including, among other things, damages for their pain and suffering, damages for their past and future lost wages and loss of earning capacity, damages for their past and future medical expenses, and damages for the loss of the services, consortium, companionship, comfort, and support of their spouses.

27

146. Plaintiffs also claim aggravating circumstances damages against Defendants to punish Defendants and to deter others from like conduct.

147. Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, are jointly and severally liable for the catastrophic injuries sustained by Plaintiffs as a result of this senseless tragedy.

**COUNT I – NEGLIGENCE**

**PLAINTIFFS v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS
and BRANSON DUCK VEHICLES, LLC, d/b/a RIDE THE DUCKS**

148. Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

149. Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, and/or Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, owned and operated *Stretch Duck 07* and owed Plaintiffs a duty to act reasonably before conducting Duck Boat tours and to obey all waterway and boating rules and standards while operating Duck Boats on Table Rock Lake.

150. Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, and/or Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, breached that duty and proximately caused the injuries to Plaintiffs.

151. Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, and/or Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, by and through their respective agents, servants, workmen and employees, were negligent, careless, grossly negligent and reckless both generally

28

and in the following particular respects, all of which was within the privity and/or knowledge of

Defendants:

     a.     Failing to implement policies, procedures and crew training to ensure passenger safety when Duck Boats were operating on Table Rock Lake;

     b.     Failing to develop and implement sufficient safety procedures for emergency situations, including but not limited to, abandoning ship;

     c.     Failing to train their personnel how to properly operate Duck Boats in the event of adverse weather;

     d.     Operating the Duck Boat in a careless and negligent manner;

     e.     Failing to exercise reasonable care under all of the circumstances;

     f.     Operating a vessel whose engine and/or exhaust system were in a known poor state of repair;

     g.     Failing to have properly operating safety equipment on board;

     h.     Failing to distribute life jackets in a timely manner;

     i.     Failing to ensure that all passengers put on their life jackets and that the jackets were properly secured;

     j.     Failing to requiring passengers to don life jackets when the Duck Boat was confronted with severe weather while conducting waterborne operations, in violation of Coast Guard regulations;

     k.     Failing to ensure that the captain and the crew were properly trained to operate the Duck Boat;

     l.     Failing to properly train the crew in the proper and safe operation of the Duck Boat;

     m.     Failing to maintain the Duck Boat in a reasonable manner;

     n.     Reversing the land portion of the tour and the water portion of the tour in an attempt to beat a well-predicted storm;

     o.     Sending the Duck Boat onto the lake with knowledge of an approaching storm;

p.  Sending the Duck Boat onto the lake in violation of the terms of its Coast Guard permits;

q.  Sending the Duck Boats onto the lake with a well-publicized, approaching storm with predicted conditions that would violate the terms of its Coast Guard permit;

r.  Having actual knowledge of forecasted adverse weather conditions that would affect the safety of the Duck Boat passengers and sending the Duck Boat onto the lake;

s.  Failing to recognize a risk to passenger safety in operating the Duck Boat during a severe thunderstorm warning;

t.  Failing to have a policy prohibiting operation of Duck Boats during a severe thunderstorm warning;

u.  Failing to train their personnel not to operate Duck Boats during a severe thunderstorm warning;

v.  Failing to properly monitor the weather;

w.  Failing to have proper severe weather policies;

x.  Failing to implement and/or follow standard operating procedures;

y.  Failing to properly qualify the crew;

z.  Failing to provide the fleet and/or crew with effective safety policies and procedures;

aa.  Failing to properly oversee the fleet and/or crew;

bb.  Failing to correct conditions of unseaworthiness within their privity or knowledge;

cc.  Failing to have a competent crew piloting the vessel;

dd.  Failing to have a seaworthy vessel that would remain afloat while flooded;

ee.  Failing to incorporate the safety recommendations of the NTSB.

152.  By reason of the carelessness, negligence, gross negligence and recklessness of

Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, and/or Branson Duck Vehicles,

30

LLC, d/b/a Ride the Ducks, Plaintiffs were caused to sustain the serious, permanent, and disabling personal injuries as set forth more fully above.

153.    By conducting themselves as described above, Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, and/or Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, evidenced a reckless and/or conscious disregard for the rights and safety of others, including Plaintiffs.

154.    By conducting themselves as described above, the acts and/or omissions of the Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, and/or Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, were a substantial factor, a factual cause and/or increased the risk of harm of Plaintiffs' catastrophic injuries.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, and Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

## COUNT II - STRICT PRODUCT LIABILITY

### PLAINTIFFS v. RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC

155.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

156.    Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and/or Amphibious Vehicle Manufacturing, LLC, by and through their

31

agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under Missouri Revised Statute § 537.760.1 because:

    a.    Defendants are engaged in the business of designing, manufacturing, assembling, distributing, selling and/or supplying Duck Boats;

    b.    The Duck Boat involved in Plaintiffs' accident was placed in the general stream of commerce by Defendants;

    c.    The Duck Boat involved in Plaintiffs' accident was put to use in a manner reasonably anticipated by Defendants; and

    d.    The Duck Boat involved in Plaintiffs' accident was designed, manufactured, assembled, distributed and/or sold in a defective condition for the reasons set forth below.

157.    Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and/or Amphibious Vehicle Manufacturing, LLC, by and through their agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under Missouri Revised Statute § 537.760.1 by:

    a.    Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

    b.    Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous for its intended use;

    c.    Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

    d.    Failing to have adequate warnings/instructions on and/or with the Duck Boat;

    e.    Failing to provide adequate warnings/instructions to the ultimate users of the product;

    f.    Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features;

g.  Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices;

h.  Designing, manufacturing, assembling, selling, and/or supplying Duck Boats without incorporating therein the state of the art of the industry and the state of the art in the science and engineering;

i.  Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats that lacked acceptable buoyancy;

j.  Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats without following safety recommendations of the NTSB;

k.  Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats in such a manner that passengers become entrapped within the canopy of the boat in the event of swamping or capsizing;

l.  Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats without a proper curtain emergency release system that could be engaged by the Captain or Driver in the event of swamping or capsizing;

m.  Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats with the exhaust system improperly placed leaving the boats exposed to risk of sinking in rough water conditions;

n.  Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats with an open hood that was not watertight;

o.  Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats that were insufficient and/or unsafe for their intended use.

158.  By conducting themselves as stated, the actions and/or in-actions of Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and/or Amphibious Vehicle Manufacturing, LLC, were substantial factors, a factual cause and/or increased the risk of harm to Plaintiffs.

159.  The Duck Boats were not equipped at the time they left the possession and control of Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of

33

Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and/or Amphibious Vehicle Manufacturing, LLC, with every element necessary to make them safe for their intended use, reasonably foreseeable uses, and reasonably foreseeable misuses.

160.    By reason of the breach of duties pursuant to Missouri Revised Statute § 537.760.1 of Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and/or Amphibious Vehicle Manufacturing, LLC, by and through their agents, servants, workmen, contractors, suppliers, distributors and/or employees, Plaintiffs were caused to sustain the serious, permanent, and disabling personal injuries as set forth more fully above.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

## COUNT III - NEGLIGENCE

### PLAINTIFFS v. RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC

161.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

34

162.  At all relevant times herein and material hereto, Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and/or Amphibious Vehicle Manufacturing, LLC, manufactured, designed, distributed, sold, installed, supplied, and/or assembled *Stretch Duck 07*.

163.  Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and/or Amphibious Vehicle Manufacturing, LLC, by and through their agents, servants, workers and employees were jointly and severally careless, negligent, grossly negligent and/or reckless as follows, all of which was within the privity and knowledge of Defendants:

a.  Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

b.  Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous for its intended use;

c.  Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

d.  Failing to have adequate warnings/instructions on and/or with the Duck Boat;

e.  Failing to provide adequate warnings/instructions to the ultimate users of the product;

f.  Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

g.  Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features;

h.  Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

35

i. Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices;

j. Designing, manufacturing, assembling, selling, and/or supplying Duck Boats without incorporating therein the state of the art of the industry and the state of the art in the science and engineering;

k. Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats that lacked acceptable buoyancy;

l. Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats without following safety recommendations of the National Transportation Safety Board;

m. Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats without a proper curtain emergency release system that could be engaged by the Captain or Driver in the event of swamping or capsizing;

n. Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats with the exhaust system improperly placed leaving the boats exposed to risk of sinking in rough water conditions;

o. Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats with an open hood that was not watertight;

p. Designing, assembling, manufacturing, selling, supplying and distributing Duck Boats that were insufficient and/or unsafe for their intended use.

164. Additionally, Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and/or Amphibious Vehicle Manufacturing, LLC, operated the Branson Duck Boat operations for decades.

165. In that capacity, Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and/or Amphibious Vehicle Manufacturing, LLC, set policies

36

and procedures for how Duck Boat operations would be conducted in Branson, which were later adopted by Ripley.

166. Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and/or Amphibious Vehicle Manufacturing, LLC, hired and trained numerous personnel that were involved in the acts and omissions that led to this tragedy.

167. Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and/or Amphibious Vehicle Manufacturing, LLC, by and through their respective agents, servants, workmen and employees, were negligent, careless, grossly negligent and reckless both generally and in the following particular respects, all of which was within the privity and/or knowledge of Defendants:

  a. Failing to implement policies, procedures and crew training to ensure passenger safety when Duck Boats were operating on Table Rock Lake;

  b. Failing to develop and implement sufficient safety procedures for emergency situations, including but not limited to, abandoning ship;

  c. Failing to train their personnel how to properly operate Duck Boats in the event of adverse weather;

  d. Operating the Duck Boat in a careless and negligent manner;

  e. Failing to exercise reasonable care under all of the circumstances;

  f. Operating a vessel whose engine and/or exhaust system were in a known poor state of repair;

  g. Failing to have properly operating safety equipment on board;

  h. Failing to distribute life jackets in a timely manner;

  i. Failing to ensure that all passengers put on their life jackets and that the jackets were properly secured;

j.    Failing to ensure that the captain and the crew were properly trained to operate the Duck Boat;

k.    Failing to properly train the crew in the proper and safe operation of the Duck Boat;

l.    Failing to maintain the Duck Boat in a reasonable manner;

m.    Failing to recognize a risk to passenger safety in operating the Duck Boat during a severe thunderstorm warning;

n.    Failing to have a policy requiring passengers to don life jackets when the Duck Boat was confronted with severe weather while conducting waterborne operations, in violation of Coast Guard regulations;

o.    Failing to implement and/or follow standard operating procedures;

p.    Failing to properly qualify the crew;

q.    Failing to provide the fleet and/or crew with effective safety policies and procedures;

r.    Failing to properly oversee the fleet and/or crew;

s.    Failing to correct conditions of unseaworthiness within their privity or knowledge;

t.    Failing to have a competent crew piloting the vessel;

u.    Failing to have a policy prohibiting operation of Duck Boats during a severe thunderstorm warning;

v.    Failing to train their personnel not to operate Duck Boats during a severe thunderstorm warning;

w.    Failing to have proper policies or procedures for closing the hood of the Duck Boat when encountering rough conditions on the water;

x.    Failing to have a seaworthy vessel that would remain afloat while flooded;

y.    Failing to incorporate the safety recommendations of the NTSB;

z.    Failing to properly monitor the weather;

aa.    Failing to have proper severe weather policies.

168.    By reason of the carelessness, negligence, gross negligence and recklessness of Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of

38

Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and/or Amphibious Vehicle Manufacturing, LLC, as aforesaid, Plaintiffs were caused to sustain the serious, permanent, and disabling personal injuries as set forth more fully above.

169.    By conducting themselves as set forth above, the acts and/or omissions of Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and/or Amphibious Vehicle Manufacturing, LLC, were a substantial factor, a factual cause and/or increased the risk of harm of Plaintiffs' catastrophic injuries.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

### COUNT IV - OUTRAGEOUS CONDUCT (PUNITIVE DAMAGES)

**PLAINTIFFS v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, BRANSON DUCK VEHICLES, LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC**

170.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

171.    At all times relevant hereto, Defendants' conduct was beyond all possible bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized community.

172.    Defendants blatantly ignored the safety and design recommendations of the National Transportation Safety Board following the 1999 *Miss Majestic* disaster and the 2010 fatal accident in Philadelphia.

173.    Defendants egregiously ignored the written warnings of the private inspector who told them, in August 2017, that the design of their Duck Boats put their vessels at risk of sinking.

174.    Defendants acted outrageously by conducting waterborne operations in the face of severe weather warnings.

175.    Defendants blatantly disregarded the Coast Guard's prohibitions and conditions of operation by conducting waterborne operations when winds were almost double the maximum allowed for Defendants to take *Stretch Duck 07* on Table Rock Lake.

176.    Defendant egregiously ignored the fact that their Duck Boats were responsible for dozens of deaths prior to the Table Rock Lake disaster.



40

177.    Defendants knew that the defective and dangerous condition of *Stretch Duck 07* posed a very high risk of serious bodily injury and/or death to passengers.

178.    Defendants knowingly, willfully, and intentionally failed to take proper and recommended action to make their Duck Boats safe for passengers.

179.    Defendants failed to incorporate the NTSB safety recommendations and safety designs to save money.

180.    Defendants put profits over people and exposed their passengers to unsafe conditions and hazards to improve their bottom line.

181.    Defendants' conduct rises to the level of outrageous conduct by willfully and recklessly ignoring the known dangerous condition of *Stretch Duck 07* which caused Plaintiffs' catastrophic injuries.

182.    Defendants acted in a willful, wanton and reckless disregard for the safety of their passengers.

183.    This and other misconduct constituted outrageous, willful and/or wanton misconduct, and manifested a reckless indifference to the rights of others to support an award of punitive damages and/or damages for aggravating circumstances.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating

41

circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

## COUNT V - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**RONITA McKINLEY v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, BRANSON DUCK VEHICLES, LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC**

184.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

185.    Ronita McKinley was a passenger on *Stretch Duck 07* at the time of this tragedy.

186.    In the moments leading up to when *Stretch Duck 07* sank to the bottom of Table Rock Lake, Ronita McKinley was in the zone of danger and was placed in danger of, and actually suffered, physical injuries as set forth at length above.

187.    In addition, Ronita McKinley witnessed as the thirty passengers of *Stretch Duck 07* suffered serious injuries, many fatal, caused as a direct result of Defendants' conduct.

188.    She was a bystander witnessing as her daughters, Tiffany and Tomlyn, her son-in-law, Shayne, her granddaughters, Talyssa, Gillian, and Ch.M., a minor, and her grandsons, T.K., a minor, and Ca.M., a minor, struggled and eventually escaped the sinking Duck Boat.

189.    In fighting for her life in Table Rock Lake and escaping from the sinking *Stretch Duck 07*, and as a result of witnessing the injuries caused to other passengers of *Stretch Duck 07*, Ronita McKinley, in addition to her physical injuries, suffered further injuries including, but not limited to:   emotional distress, psychological pain and suffering, severe mental anguish, and other psychological, emotional, and mental injuries.

42

**WHEREFORE**, Plaintiff demands judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

### COUNT VI - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### <u>SHAYNE COLLINS v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, BRANSON DUCK VEHICLES, LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC</u>

190.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

191.    Shayne Collins was a passenger on *Stretch Duck 07* at the time of this tragedy.

192.    In the moments leading up to when *Stretch Duck 07* sank to the bottom of Table Rock Lake, Shayne Collins was in the zone of danger and was placed in danger of, and actually suffered, physical injuries as set forth at length above.

193.    In addition, Shayne Collins witnessed as the thirty passengers of *Stretch Duck 07* suffered serious injuries, many fatal, caused as a direct result of Defendants' conduct.

194.    He was a bystander witnessing as his wife, Tiffany, his daughter, Gillian Collins, his stepdaughter, Talyssa, his stepson, T.K., a minor, his mother-in-law, Ronita, his sister-in-law,

Tomlyn, his niece, Ch.M., a minor, and his nephew, Ca.M., a minor, struggled and eventually escaped the sinking Duck Boat.

195.    In fighting for his life in Table Rock Lake and escaping from the sinking *Stretch Duck 07*, and as a result of witnessing the injuries caused to other passengers of *Stretch Duck 07*, Shayne Collins, in addition to his physical injuries, suffered further injuries including, but not limited to:  emotional distress, psychological pain and suffering, severe mental anguish, and other psychological, emotional, and mental injuries.

**WHEREFORE**, Plaintiff demands judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

### COUNT VII - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**TIFFANY COLLINS v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, BRANSON DUCK VEHICLES, LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC**

196.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

197.    Tiffany Collins was a passenger on *Stretch Duck 07* at the time of this tragedy.

44

198.    In the moments leading up to when *Stretch Duck 07* sank to the bottom of Table Rock Lake, Tiffany Collins was in the zone of danger and was placed in danger of, and actually suffered, physical injuries as set forth at length above.

199.    In addition, Tiffany Collins witnessed as the thirty passengers of *Stretch Duck 07* suffered serious injuries, many fatal, caused as a direct result of Defendants' conduct.

200.    She was a bystander witnessing as her husband, Shayne, her daughter, Talyssa, her son, T.K., her stepdaughter, Gillian, her mother, Ronita, her sister, Tomlyn, her nephew, Ca.M., and her niece, Ch.M., struggled and eventually escaped the sinking Duck Boat.

201.    In fighting for her life in Table Rock Lake and escaping from the sinking *Stretch Duck 07*, and as a result of witnessing the injuries caused to other passengers of *Stretch Duck 07*, Tiffany Collins, in addition to her physical injuries, suffered further injuries including, but not limited to:  emotional distress, psychological pain and suffering, severe mental anguish, and other psychological, emotional, and mental injuries.

**WHEREFORE**, Plaintiff demands judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

## COUNT VIII - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**TIFFANY COLLINS, individually and as parent and natural guardian of T.K., a minor v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, BRANSON DUCK VEHICLES, LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC**

202.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

203.    T.K., a minor, was a passenger on *Stretch Duck 07* at the time of this tragedy.

204.    In the moments leading up to when *Stretch Duck 07* sank to the bottom of Table Rock Lake, T.K., a minor, was in the zone of danger and was placed in danger of, and actually suffered, physical injuries as set forth at length above.

205.    In addition, T.K., a minor, witnessed as the thirty passengers of *Stretch Duck 07* suffered serious injuries, many fatal, caused as a direct result of Defendants' conduct.

206.    He was a bystander witnessing as his mother, Tiffany, his stepfather, Shayne, his sister, Talyssa, his stepsister, Gillian, his grandmother, Ronita, his aunt, Tomlyn, and his cousins, Ca.M., a minor, and Ch.M., a minor, struggled and eventually escaped the sinking Duck Boat.

207.    In fighting for his life in Table Rock Lake and escaping from the sinking *Stretch Duck 07*, and as a result of witnessing the injuries caused to other passengers of *Stretch Duck 07*, T.K., a minor, in addition to his physical injuries, suffered further injuries including, but not limited to:  emotional distress, psychological pain and suffering, severe mental anguish, and other psychological, emotional, and mental injuries.

**WHEREFORE**, Plaintiff demands judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, Ride the Ducks

46

International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

### COUNT IX - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**TALYSSA MANN v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, BRANSON DUCK VEHICLES, LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC**

208. Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

209. Talyssa Mann was a passenger on *Stretch Duck 07* at the time of this tragedy.

210. In the moments leading up to when *Stretch Duck 07* sank to the bottom of Table Rock Lake, Talyssa Mann was in the zone of danger and was placed in danger of, and actually suffered, physical injuries as set forth at length above.

211. In addition, Talyssa Mann witnessed as the thirty passengers of *Stretch Duck 07* suffered serious injuries, many fatal, caused as a direct result of Defendants' conduct.

212. She was a bystander witnessing as her mother, Tiffany, her stepfather, Shayne, her brother, T.K., a minor, her stepsister, Gillian, her grandmother, Ronita, her aunt, Tomlyn, and her cousins, Ca.M., a minor, and Ch.M., a minor, struggled and eventually escaped the sinking Duck Boat.

47

213.    In fighting for her life in Table Rock Lake and escaping from the sinking *Stretch Duck 07*, and as a result of witnessing the injuries caused to other passengers of *Stretch Duck 07*, Talyssa Mann, in addition to her physical injuries, suffered further injuries including, but not limited to:  emotional distress, psychological pain and suffering, severe mental anguish, and other psychological, emotional, and mental injuries.

**WHEREFORE**, Plaintiff demands judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

### COUNT X - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**TOMLYN McDONALD v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, BRANSON DUCK VEHICLES, LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC**

214.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

215.    Tomlyn McDonald was a passenger on *Stretch Duck 07* at the time of this tragedy.

48

216.   In the moments leading up to when *Stretch Duck 07* sank to the bottom of Table Rock Lake, Tomlyn McDonald was in the zone of danger and was placed in danger of, and actually suffered, physical injuries as set forth at length above.

217.   In addition, Tomlyn McDonald witnessed as the thirty passengers of *Stretch Duck 07* suffered serious injuries, many fatal, caused as a direct result of Defendants' conduct.

218.   She was a bystander witnessing as her son, Ca.M., a minor, her daughter, Ch.M., a minor, her mother, Ronita, her sister, Tiffany, her brother-in-law, Shayne, her nieces, Talyssa and Gillian, and her nephew, T.K., a minor, struggled and eventually escaped the sinking Duck Boat.

219.   In fighting for her life in Table Rock Lake and escaping from the sinking *Stretch Duck 07*, and as a result of witnessing the injuries caused to other passengers of *Stretch Duck 07*, Tomlyn McDonald, in addition to her physical injuries, suffered further injuries including, but not limited to:  emotional distress, psychological pain and suffering, severe mental anguish, and other psychological, emotional, and mental injuries.

**WHEREFORE**, Plaintiff demands judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

49

## COUNT XI - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**TOMLYN McDONALD and DUSTIN McDONALD, individually and as parents and natural guardians of Ca.M., a minor v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, BRANSON DUCK VEHICLES, LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC**

220.     Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

221.     Ca.M., a minor, was a passenger on *Stretch Duck 07* at the time of this tragedy.

222.     In the moments leading up to when *Stretch Duck 07* sank to the bottom of Table Rock Lake, Ca.M., a minor, was in the zone of danger and was placed in danger of, and actually suffered, physical injuries as set forth at length above.

223.     In addition, Ca.M., a minor, witnessed as the thirty passengers of *Stretch Duck 07* suffered serious injuries, many fatal, caused as a direct result of Defendants' conduct.

224.     He was a bystander witnessing as his mother, Tomlyn, his sister, Ch.M., a minor, his grandmother, Ronita, his aunt, Tiffany, his uncle, Shayne, and his cousins, Talyssa, Gillian and T.K., a minor, struggled and eventually escaped the sinking Duck Boat.

225.     In fighting for his life in Table Rock Lake and escaping from the sinking *Stretch Duck 07*, and as a result of witnessing the injuries caused to other passengers of *Stretch Duck 07*, Ca.M., a minor, in addition to his physical injuries, suffered further injuries including, but not limited to:  emotional distress, psychological pain and suffering, severe mental anguish, and other psychological, emotional, and mental injuries.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, Ride the Ducks

International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

### COUNT XII - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**TOMLYN McDONALD and DUSTIN McDONALD, individually and as parents and natural guardians of Ch.M., a minor v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, BRANSON DUCK VEHICLES, LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC**

226.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

227.    Ch.M., a minor, was a passenger on *Stretch Duck 07* at the time of this tragedy.

228.    In the moments leading up to when *Stretch Duck 07* sank to the bottom of Table Rock Lake, Ch.M., a minor, was in the zone of danger and was placed in danger of, and actually suffered, physical injuries as set forth at length above.

229.    In addition, Ch.M., a minor, witnessed as the thirty passengers of *Stretch Duck 07* suffered serious injuries, many fatal, caused as a direct result of Defendants' conduct.

230.    She was a bystander witnessing as her mother, Tomlyn, her brother, Ca.M., a minor, her grandmother, Ronita, her aunt, Tiffany, her uncle, Shayne, and her cousins, Talyssa, Gillian, and T.K., a minor, struggled and eventually escaped the sinking Duck Boat.

51

231.    In fighting for her life in Table Rock Lake and escaping from the sinking *Stretch Duck 07*, and as a result of witnessing the injuries caused to other passengers of *Stretch Duck 07*, Ch.M., a minor, in addition to her physical injuries, suffered further injuries including, but not limited to:  emotional distress, psychological pain and suffering, severe mental anguish, and other psychological, emotional, and mental injuries.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

## COUNT XIII - LOSS OF CONSORTIUM

### GARY McKINLEY v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, BRANSON DUCK VEHICLES, LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC

232.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

233.    Plaintiff, Gary McKinley, is and has been at all relevant times the husband of Plaintiff, Ronita McKinley, and as such, is entitled to her society, companionship and services.

234.    By reason of the Defendants' carelessness, negligence, recklessness, gross negligence, outrageous conduct, and other liability-producing conduct as aforesaid, Plaintiff-

husband, Gary McKinley, has suffered the loss of consortium and has been deprived of his wife's love, companionship, comfort, affection, society, moral guidance, intellectual strength and physical assistance and the loss of the assistance and earnings of Plaintiff-wife, Ronita McKinley.

**WHEREFORE**, Plaintiff demands judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

### COUNT XIV - LOSS OF CONSORTIUM

**DUSTIN McDONALD v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, BRANSON DUCK VEHICLES, LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC**

235. Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

236. Plaintiff, Dustin McDonald, is and has been at all relevant times the husband of Plaintiff, Tomlyn McDonald, and as such, is entitled to her society, companionship and services.

237. By reason of the Defendants' carelessness, negligence, recklessness, gross negligence, outrageous conduct, and other liability-producing conduct as aforesaid, Plaintiff-husband, Dustin McDonald, has suffered the loss of consortium and has been deprived of his

wife's love, companionship, comfort, affection, society, moral guidance, intellectual strength and physical assistance and the loss of the assistance and earnings of Plaintiff-wife, Tomlyn McDonald.

**WHEREFORE**, Plaintiff demands judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, Ride the Ducks International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

## COUNT XV - VIOLATIONS OF THE
## MISSOURI MERCHANDISING PRACTICES ACT

**PLAINTIFFS v. RIPLEY ENTERTAINMENT, INC., d/b/a RIDE THE DUCKS, BRANSON DUCK VEHICLES, LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS INTERNATIONAL LLC, d/b/a RIDE THE DUCKS, RIDE THE DUCKS OF BRANSON, LLC, d/b/a RIDE THE DUCKS, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, d/b/a RIDE THE DUCKS, and AMPHIBIOUS VEHICLE MANUFACTURING, LLC**

238.   Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

239.   Missouri Revised Statute § 407.010, *et seq.*, the Missouri Merchandising Practices Act (or "MMPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce".  Mo. Rev. Stat. § 407.020 (1).

54

240.    Defendants sold tickets for the ill-fated *Stretch Duck 07* tour of July 19, 2018, to Plaintiffs.

241.    The *Stretch Duck 07* tour was a "service" as defined under Missouri Revised Statute § 407.010, *et seq.*

242.    The tickets purchased by or on behalf of Plaintiffs for the *Stretch Duck 07* tour of July 19, 2018, were purchased for their personal purpose.

243.    Defendants represented to consumers, including Plaintiffs, that their Duck Boats were equipped with the "latest in marine safety" and "modern safety equipment".

244.    Defendants assured consumers, including Plaintiffs, that the design of their Duck Boats allowed them "to go into the water without being flooded".

245.    Defendants promised consumers, including Plaintiffs, that "the ducks use marine design for maximum safety".

246.    Defendants also stated to consumers, including Plaintiffs, that their Duck Boats were "state of the art", and utilized "patented safety features that no other duck-style vehicle has".

247.    Defendants promised consumers, including Plaintiffs, that "safety is our priority".

248.    By reason of Defendants' conduct as set forth above, Defendants have engaged in unfair or deceptive acts or practices in violation of the MMPA.

249.    Defendants' practices as described herein violate the MMPA because the practices were and are intended to deceive consumers in connection with the sale of their services and occurred in the course of conduct involving trade and commerce in Taney County, located within the United States District Court for the Western District of Missouri.

250.    At all times relevant herein, Defendants, by and through their respective agents, servants, workmen and employees, violated the MMPA by making and disseminating untrue, false, and misleading statements to consumers, including Plaintiffs, to promote the sale of their services, or by causing untrue, false, and misleading statements their Duck Boats to be made or disseminated to consumers, including Plaintiffs, in order to promote the sale and use of their services.  These untrue, false, and misleading statements included, but were not limited to:

    a.    Misrepresenting the truth about the unsafe nature of their Duck Boats;

    b.    Misrepresenting that their Duck Boats are safe;

    c.    Misrepresenting that their Duck Boats have the latest safety features;

    d.    Misrepresenting that safety is the priority of Defendants;

    e.    Misleading consumers to believe that their Duck Boats are safe;

    f.    Falsely claiming that their Duck Boats are safe;

    g.    Falsely claiming that their Duck Boats utilize state of the art safety equipment;

    h.    Falsely omitting or minimizing the known dangers associated with their Duck Boats.

251.    At all times relevant herein, Defendants, by and through their respective agents, servants, workmen and employees, also violated the MMPA by making statements that omitted or concealed material facts to promote the sale of their services.

252.    At all times relevant herein, Defendants, by and through their respective agents, servants, workmen and employees, repeatedly failed to disclose or minimized material facts about the known risks and dangers associated with their Duck Boats.

253.    At all times relevant herein, Defendants, by and through their respective agents, servants, workmen, employees, and/or third parties, made and disseminated the foregoing untrue,

56

false and misleading statements, and material omissions, through an array of marketing channels, including, but not limited to, online, print, television, and social media advertising.

254.     Defendants knew at the time of making or disseminating these misstatements and material omissions, or causing these misstatements and material omissions statements to be made or disseminated, that they were untrue, false, or misleading and therefore likely to deceive consumers, including Plaintiffs.

255.     In addition, Defendants knew or should have known that their marketing and promotional efforts created an untrue, false, and misleading impression of the safety of their Duck Boats.

256.     In sum, Defendants: (a) directly engaged in untrue, false, and misleading marketing in trade or commerce; (b) disseminated the untrue, false, and misleading marketing through third parties; and (c) aided and abetted the untrue, false, and misleading marketing through third parties.

257.     All of this conduct, separately and collectively, was intended to deceive consumers, including Plaintiffs.

258.     As a direct result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits, which they would not have received if they had not engaged in the violations of the MMPA as described above.

259.     By reason of the foregoing, Plaintiffs suffered ascertainable losses, including economic losses, as described in Missouri Revised Statute § 407.025, *et seq.*, and claim punitive damages and attorney's fees pursuant to Missouri Revised Statute § 407.025 (1).

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Ripley Entertainment, Inc., d/b/a Ride the Ducks, Branson Duck Vehicles, LLC, d/b/a Ride the Ducks, Ride the Ducks

International LLC, d/b/a Ride the Ducks, Ride the Ducks of Branson, LLC, d/b/a Ride the Ducks, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, LLC, jointly and severally, for compensatory damages in excess of the jurisdictional threshold, along with damages for delay, costs, fees, exemplary, aggravating circumstances damages, punitive damages, and all other damages allowable and recoverable by law.

Respectfully submitted,

**ALESHIRE ROBB, P.C.**

*/s/ Gregory W. Aleshire*
Gregory W. Aleshire, Mo Bar #38691
William R. Robb, Mo Bar #43322
Kevin J. Rapp, Mo Bar #57974
2847 S. Ingram Mill Road A-102
Springfield, MO 65804
Phone: (417) 869-3737
Fax: (417) 869-5678

AND

(Pending Admission *Pro Hac Vice*)
**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**
Robert J. Mongeluzzi, PA Bar #36283
Andrew R. Duffy, PA Bar #77121
Jeffrey P. Goodman, PA Bar #309433
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Phone: (215) 496-8282
Fax: (215) 496-0999